CHAS E. ANDREAS, Appellee, v. JOAB HINSON, Appellant.

Slander per se: SENSE IN WHICH WORDS WERE USED: EVIDENCE. In this action for slander the question of whether the words, slanderous *per se,* were used in a slanderous sense or only in a vituperative sense and were so understood by the hearers was for the jury.

Same: PRESUMPTION. The presumption is that language slanderous *per se* was used and understood by the hearers in its ordinary sense, and the burden is upon the defendant to show that it was used and understood in a different sense; and in passing on this question the whole evidence must be considered: So that any error in refusing to direct a verdict for defendant at the close of plaintiff's evidence is not available to defendant, where he subsequently offered evidence curing the defects in plaintiff's case.

Same: EVIDENCE: PREJUDICE. The sustaining of an objection to a question which had been previously fully answered was not prejudicial.

**Same:** EVIDENCE: MALICE: MITIGATION. In an action for slander the same evidence which tends to show malice may also be considered in mitigation of damages.

**Same.** Malice is implied from the use of words slanderous *per se.*

**Same:** DAMAGES: EXCESSIVE VERDICT. Where the words used were actionable *per se,* actual damages may be awarded without formal proof of the amount; and where the amount of verdict did not indicate passion and prejudice it will not be disturbed.

*Appeal from Des Moines District Court.*—HON. W. S. WITHROW, Judge.

THURSDAY, OCTOBER 24, 1912.

ACTION for slander. There was a verdict for the plaintiff for $300 and judgment entered thereon. Defendant appeals.—*Affirmed.*

*C. H. Mohland,* and *Poor & Poor,* for appellant.

*Tracy & Tracy,* for appellee.

EVANS, J.—The slanderous words charged were, "You are a son of a bitch and a thief." It is charged that these words were uttered by defendant to the plaintiff in the presence of other persons. The contention of the defendant is that he uttered such words, not in a slanderous sense, but in a vituperative sense only, and in the heat of anger; that he did not intend to impute any crime to the plaintiff; and that his words were understood by the hearers as not imputing any crime. The trial court instructed the jury that if the words were used only in a vituperative sense, and were only so understood by the hearers, that the use of the word "thief" in such sense was not actionable as slanderous. The defendant contends that under such a

1. SLANDER *per se*: sense in which words were used: evidence.

statement of the law there should have been a directed verdict in his favor. There is much in the record in support of the contention of the defendant. There was an altercation of words between the parties at the home of the defendant's son. The plaintiff was a comparative stranger both to defendant and his son. He had come there with Louis Dravis, who was a brother of Mrs. Dick Hinson, the daughter-in-law of the defendant. There appears to have been some estrangement between the Dravis and Hinson families, and Mrs. Dick Hinson had been either dissuaded or prevented from visiting her people. The plaintiff and Louis Dravis had come to invite Mrs. Dick Hinson to see her father, who was then ill. They came in a buggy, and offered to take her there and bring her back. The record indicates that there was some urging on their part, notwithstanding the objections of her husband, Dick Hinson. This was construed by the defendant, Joab Hinson as an attempt to steal his son's wife. This is his explanation of the use of the language charged. The instructions were such that the jury could well have found for the defendant on this contention.

Nevertheless the language used was slanderous *per se*. The plaintiff was entitled to the presumption that it was used and understood in its ordinary sense. The burden 2. SAME: was upon the defendant to show that it was presumption. used and understood in a different sense. Some of the persons who were present at the altercation testified to their understanding of the meaning intended by the defendant. Others did not testify. We can not say that the evidence is conclusive in defendant's favor at this point. His own testimony was such as to weaken the theory of his counsel and to leave the question as one fairly for the jury. Upon the whole record, therefore, we think the defendant was not entitled to a directed verdict. And this is so even though the defendant might have been entitled to a directed verdict at

the close of plaintiff's evidence. Even if the court erroneously overruled defendant's motion at that time, it will not now avail the defendant. Inasmuch as defendant proceeded with his evidence, such evidence became a part of the record. If it cured defects in plaintiff's evidence, it saved plaintiff the necessity of curing them himself. In passing upon the sufficiency of the evidence, we must look to the whole record as finally made.

II. The actionable words were charged to have been uttered on March 24, 1911, on a particular occasion. The plaintiff introduced the testimony of one Stapleton as to a conversation had between him and the defendant a few days after the 24th of March. This witness testified as to certain declarations or admissions of the defendant, as follows: "He said he told Andreas what he thought of him. I believe he said he was a damn thief, or something to that effect." On cross-examination the following appeared: "Q. What did you understand that he referred to when he said he told him what he thought of him? A. I didn't know. I supposed that he didn't want him around there. I don't know whether it was on account of being after Dick's wife. Q. *When he speaks of having said that he was a thief, what did he refer to then, as you understood?* (Objected to as incompetent, irrelevant, and immaterial, and asking for an opinion.)" The objection was sustained, and complaint is made of this ruling. It is sufficient to say that the question objected to was a mere repetition of the previous question. Such previous question was fully answered. Defendant was not prejudiced by a failure to obtain such answer a second time.

3. SAME: evidence: prejudice.

III. Complaint is made of the last part of the fifteenth instruction, which is as follows: "And if you find that the defendant at the time acted with malice against the plaintiff, you may then allow such further amount as you may deem proper by way of vindictive damages, or

damages by way of punishment." Appellant does not contend that this is not a correct statement of the law in the abstract. His argument is that he had pleaded in mitigation the fact that he had spoken the words in anger, under provocation, and that there was no evidence of malice, except such anger and opprobrious epithets used. It is argued, in substance, that the same evidence could not be considered by the jury as evidence of malice and also as evidence in mitigation of damages. We can not sustain this contention. Anger may indicate malice and yet may properly be regarded in mitigation. There are degrees of malice and the same evidence which shows malice may show it also in reduced degree.

*4. SAME: evidence: malice: mitigation.*

The charge made against the plaintiff was slanderous *per se,* and malice was therefore implied. The plaintiff was not for that reason precluded from proving malice in fact. For that purpose, he had a right to submit to the consideration of the jury the entire conduct and mental attitude of the defendant at the time of the publication of the slanderous words.

*5. SAME.*

IV. It is urged that the verdict was excessive, and that only nominal damages should have been allowed. The verdict was $300. The amount of the verdict does not indicate any passion or prejudice. The jury having found that the slanderous word was used by the defendant in an actionable sense, actual damages were implied, without any formal proof as to the amount thereof. It is not true in such a case that only nominal damages can be allowed. The amount of damages in such a case is peculiarly within the discretion of the jury. *McDonald v. Nugent,* 122 Iowa, 655; *Davis v. Mohn,* 145 Iowa, 417; *Tathwell v. City,* 122 Iowa, 54; *Morse v. Printing Co.,* 124 Iowa, 708; *Reizenstein v. Clark,* 104 Iowa, 287.

*6. SAME: damages: excessive verdict.*

We find no ground upon which we can properly inter-

fere with the verdict. The judgment of the lower court must therefore be—*Affirmed.*